[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action for a dissolution of marriage on the ground of irretrievable breakdown. He also sought a fair and equitable property settlement and other relief as on file. The defendant wife's answer admitted the allegations on the complaint. In her cross complaint, she sought a dissolution or, in the alternative, a legal separation of the parties' marriage on the ground of irretrievable breakdown. Additionally, she sought custody and support of their minor child, alimony and other relief as on file.
The parties were represented by counsel throughout these proceedings. At trial, each testified and submitted financial affidavits. A child support guidelines and arrearage worksheet was filed and a number of documentary materials were introduced into evidence. The parties waived oral argument and the filing of briefs. At the close of the taking of evidence, the court entered pendente lite orders relating to joint legal custody, visitation, the parenting education program under General Statutes § 46b-69b, child support, and the maintenance of health and life insurance in full force and effect. CT Page 4090
From the evidence, I find as follows.
The parties married each other December 17, 1982, in Old Lyme, Connecticut. The plaintiff has resided continuously in this state for at least one year prior to the date of hearing. There is one minor child, issue of the marriage, Jade A. Kensel, born March 12, 1984. No other minor child was born to the wife since the date of marriage. Neither party or the child is a recipient of public assistance, all statutory stays have expired and the court has jurisdiction.
The parties stipulated on the record that they would share joint legal custody of their daughter, with primary residence with mother, and reasonable rights of visitation to the father. They also agreed that the father would maintain health insurance for the benefit of the minor child, as available through his employment, and that the parties would equally share any unreimbursed or uncovered health care expenses incurred for the child. The husband also agreed to maintain his job related life insurance policy in the face amount of $10,000 with the minor child as irrevocable beneficiary until she reaches age 18.
They also agreed that the father would pay as child support, the sum of $166 per week, as suggested by the guidelines, to be secured by contingent wage execution, and that all tangible personal property, such as household furniture and furnishings has been satisfactorily divided.
I find that this partial agreement is fair and equitable, with the exception of the child support payments, and approve it. The parties remained at issue on a property settlement, alimony, and the allocation of debts.
The husband is 46 years of age, a high school graduate, and has worked as a plumber for over 25 years. He had a heart attack in 1994 and takes medication daily. He was able to resume full time work with some limitations. He earns $960 per week gross and $648 per week net.[1] He has a current master plumber license. His employment provides health insurance, a profit sharing plan with a value of $2,000-$3,000 in which he expects to be vested in about one and a half years, and a 401K plan to which he will commence contributing to on May 1st, 1996, and has no present value. CT Page 4091
The wife is 39 years of age, a high school graduate by GED, and suffers from depression. She is also alcohol dependent, although she has been sober for the past six months. She is unemployed and lives with her mother, her adult son from a prior marriage, and the parties' 12 year old daughter. She pays no rent. She has never held a job during the marriage for more than a four month period, largely because of her alcohol abuse, and has a modest, but questionable earning capacity in the light of her mental health. She has no special vocational or occupational skills. She has worked as a chambermaid and sales clerk, and is now on several prescribed medications. Her memory and concentration are impaired and she believes she would be unable to perform any gainful employment at the present time, despite her recent six months of sobriety.
The wife clearly drank alcohol to excess during the marriage. She had undergone a number of inpatient and outpatient therapeutic programs to deal with her condition and continues with extensive medical treatment and therapies, including Alcoholics Anonymous. It is abundantly clear from the evidence that although the husband knew of her drinking problems, and at times participated in alcohol consumption with her, that the wife's alcohol dependency and mental health problems were major contributions to the marital breakdown. The parties separated in January, 1995, and the marriage has indeed broken down irretrievably.
The parties accumulated modest assets during the marriage. The husband reports on his financial affidavit a 1991 Chevrolet automobile having negative equity, a checking account of $200, and a retirement benefit from his former employer he values at $32,000. An updated statement introduced into evidence lists a value as of April 10, 1996, of $35,479, with an immediate cash surrender value of $33,705. Any withdrawals of funds from this plan would incur surrender charges and income taxes, and the value of the plan appreciated approximately $21,000 over the marriage.
The husband's vested profit sharing plan with his present employer has a value of $2,000-$3,000, and the parties anticipate a tax refund due for the calendar year 1995, but neither reports the amount thereof on their financial affidavit. The wife reports no solely owned assets on her affidavit and has no automobile, as a result of a recent accident, which totalled her only vehicle. CT Page 4092
Against these assets, the husband discloses $10,893 in liabilities, the wife $5,970, plus $5,600 in an unpaid rental arrearage. This $5,600 is included in the husband's debts. The remainder of the parties' bills relate to medical care.
I make the following additional findings. The husband has superior employability, vocational and occupational skills, earnings and earning capacity to that of the wife. Throughout the marriage, he consistently earned far more than she did. He was the principal bread winner in the home and also supported the family and the wife's son for most of that child's minority; his natural father never paid child support nor did the wife take any action to secure same.
The husband's monetary contributions to the marriage and `marital assets' far outweighed those of the wife's. The wife was the primary homemaker and care giver to their child. The husband also acted as the father of the wife's child. Her nonmonetary contributions were greater than those of the husband.
The husband's opportunity to acquire capital assets and income in the future is greater than that of the wife. The wife agreed, subject to consultation with her therapists, to apply for social security disability benefits.
The husband enjoyed a substantial income throughout the marriage. However, he allowed the wife to principally manage the family finances, despite knowing that monies were being dissipated and bills were not being paid. Therefore, because of his passive acquiescence to his wife's fiscal mismanagement, he must shoulder some responsibility for the precarious financial situation the parties now find themselves in.
Health insurance coverage for the wife available through the husband's employment under COBRA and/or applicable state law would cost approximately $325 per month.
Because of tax planning considerations and coordination of total family support, it would be inequitable or inappropriate to apply the guideline support amount of $166 mechanically in this case. Such considerations will not result in a lesser economic benefit to the child. Because of these CT Page 4093 findings, I conclude that under the circumstances of this case, an order of unallocated support and alimony is proper at this time.
The court has considered all of the criteria in General Statutes §§ 46b-81, 46b-82 and 46b-84, in the light of the evidence and findings in the making of the financial awards set forth below. I have also considered their taxable consequences and implications and the application of the child support and arrearage guidelines.
In view of the substantial cost that the parties would have to incur for the continuance of health insurance for the wife, which they cannot readily afford, and the increasing unavailability of such insurance, especially for those persons who have pre-existing conditions as here, the court at this time deems a legal separation appropriate, equitable, and economical for these parties. Such a decree will also enable the wife to resume employment, or gain vocational training; or, if incapable of doing neither, to apply for social security disability benefits.
Accordingly, a decree of legal separation shall enter, and it is ordered as follows.
(1) Joint legal custody of the minor child is awarded to the parties, primary residence with mother and reasonable rights of visitation to father.
(2) The father shall pay to the mother $240 per week as unallocated child support and alimony, to be secured by contingent wage garnishment. In the event said garnishment becomes effective, payments shall be made directly to the payee mother. Said order shall continue for three years, and shall be sooner terminated upon the death of either party, the wife's remarriage or cohabitation within the meaning of General Statutes § 46b-86 (b).
(3) The husband shall maintain the wife and child on his job related health insurance. The parties shall each pay one half of the unreimbursed or uncovered health expenses for the child. An order pursuant to § 46b-84d shall enter.
(4) The husband shall be entitled to claim the child as a dependency exemption for income tax purposes in 1996 and CT Page 4094 all succeeding years, so long as he is current on his child support and alimony obligation as of the end of each such calendar year.
(5) The husband shall irrevocably designate the child as beneficiary of his $10,000 job related life insurance policy, and any other life insurance available through successive employment, until her 19th birthday or sooner graduation from high school. He shall execute and deliver an authorization to the wife so that she may determine the status of said policy.
(6) The husband shall take and have his 1991 Chevrolet automobile and checking account.
(7) The tax refunds shall be equally divided; one half of each spouse's share shall be applied to the indebtedness shown on their respective financial affidavits. The husband shall pay the balance of the liabilities shown on both parties' affidavits and save the wife harmless.
(8) There is assigned to and vested in the wife the sum of $6,500, plus any incidental income thereon, from and after April 11, 1996, from the husband's `Niantic' profit sharing plan held by Transamerica Life Companies (see Exhibit 4), by Qualified Domestic Relations Order (QDRO). The court shall retain jurisdiction of the QDRO until accomplished. The balance of the `Niantic' profit sharing plan, his 401K and his interest in his present employer's profit sharing plan shall belong to the husband, free of the wife's claims.
(9) Each party shall pay his or her own attorney's fees.
(10) The parties shall participate in the Parenting Education Program, Section 46b-69b.
(11) The wife's request for the restoration of her birth name to Beers is denied without prejudice. See General Statutes § 46b-63.
(12) All documents or instruments necessary or incidental to the effectuation of these orders shall be completed and exchanged by counsel and the parties within sixty (60) days hereof.
Teller, J.